## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARGIE J. RUSSELL,** | ) | |
| | ) | |
| **Plaintiff ,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 08-496-CG-B** |
| | ) | |
| **CAPITAL ONE, et al.,** | ) | |
| | ) | |
| **Defendants .** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION

COMES NOW Defendant Capital One Bank (USA), N.A., improperly designated as Capital One ("Capital One") and submits the following Memorandum of Law in support of its Motion to Compel Arbitration and states as follows:

## INTRODUCTION

Plaintiff Margie J. Russell's ("Plaintiff" or "Russell") Complaint asserts various claims and causes of action against Capital One.  Russell's claims should be compelled to arbitration pursuant to federal, Virginia, and Alabama law because:

> \*    Russell's Customer Agreements for both accounts which are the subject of this lawsuit   contain a valid arbitration provision;

{B0949892}

\*      Russell's claims fall within the scope of the arbitration provision; and

\*      The Customer Agreements governing both accounts evidence a transaction involving interstate commerce.

### STATEMENT OF FACTS

Plaintiff opened an account with Capital One bearing Account No. xxxx-xxxx-xxxx-2101 on or around November 18, 2002.   On August 24, 2006, following a lost/stolen report, the 2101 account was transferred to a new account number ending in xxxx-xxxx-xxxx-3695 (the "2101/3695 Account").   Plaintiff opened a second account with Capital One bearing Account No. xxxx-xxxx-xxxx-3563 (the "3563 Account") on or around August 26, 2003.   (See Affidavit of Victoria C. Spellman, ¶ 5; attached to Evidentiary Submission as Exhibit "A").   After each Account was opened by Plaintiff, Capital One sent her a Customer Agreement (the "Agreement") establishing the terms of each Account.   (See Exhibit A, ¶¶ 6-7; and Customer Agreements for 2101/3695 and 3563 accounts attached to Exhibit A as Exhibits "3-6").   The Agreement for the 3563 account and the Agreement for the 2101/3695 account each contain an arbitration provision that requires the parties to submit any claim or dispute arising out of or relating to the credit card accounts to binding arbitration upon the election by either party.

The arbitration provision in each Agreement provides, in pertinent part:

**ARBITRATION:**

2

You and we agree that either you or we may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration.

**IF YOU OR WE ELECT ARBITRATION OF A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR BEFORE A JUDGE OR JURY OR TO PARTICIPATE IN A CLASS ACTION OR ANY OTHER COLLECTIVE OR REPRESENTATIVE PROCEEDING.   EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING.   OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, INCLUDING THE RIGHT TO CONDUCT DISCOVERY OR TO APPEAL, MAY BE LIMITED OR UNAVAILABLE IN ARBITRATION.   THE FEES ASSOCIATED WITH ARBITRATION MAY BE HIGHER THAN THE FEES ASSOCIATED WITH COURT PROCEEDINGS.**

(Exhibit A, Exhibits 3-6).

The arbitration provision governs any dispute between Capital One and Plaintiff.  The arbitration provision defines the entities and persons governed by the arbitration agreement as follows:

In this Agreement, the words "you," "your" and "yours" refer to each person who signed the application and to anyone else who uses the account in anyway.  Each of you is individually and jointly obligated under this Agreement.

* * * *

**Special Definitions for this Arbitration Provision.**  For the purposes of this arbitration provision ("Arbitration Provision"), the following definitions shall apply in

3

addition to the definitions set forth in this Customer
Agreement ("Agreement"):

"**We**," "**us**" and "**our**" mean the owner of your account
(Capital One Bank or Capital One, F.S.B.), its parent, and
their direct and indirect subsidiaries and affiliates, as well
as all of their respective employees, officers, directors,
licensees, predecessors, successors, and assigns.

(Exhibit A, Exhibits 3-6). The arbitration provision also broadly defines what

disputes or claims may be decided by arbitration:

"**Claim**" means any claim, controversy, or dispute of any
kind or nature between you and us.

*A. This definition includes, without limitation, any
Claim that in any way arises from or relates to*:

- this Agreement and any of its terms (including any prior
  agreements between you and us or between you and any other
  entity from which we acquired your account)
- this Arbitration Provision (including whether any Claim is
  subject to arbitration)
- the establishment, operation, or termination of your account
- any disclosures, advertisements, promotions, or other
  communications relating to your account, whether they occurred
  before or after your account was opened
- any transactions or attempted transactions involving your account
- any billing or collection matters relating to your account
- any posting of transactions (including payments or credits) to
  your account
                              ***
- any other matters relating to your account or your relationship
  with us.

*B. This definition also includes, without limitation, any
Claim:*

4

- regardless of how or when it is brought (for example, as an initial claim, counterclaim, cross-claim, interpleading, or third-party claim)
- based on any theory of relief or damages (including money damages and any form of specific performance or injunctive, declaratory, or other equitable relief
- based on any theory of law or equity (including contract, tort, fraud, constitution, statute, regulation, ordinance, or wrongful acts or omissions of any type, whether negligent, reckless, or intentional)
- made by you or by anyone connected with you or claiming through or for you (including a co-applicant or authorized user of your account, your agent, your representative, your heirs, or a trustee in bankruptcy)

***

- now in existence or that may arise in the future, regardless of when the facts and circumstances that give rise to the Claim occurred or when the Claim accrues

(Exhibit A, Exhibits 3-6)

On August 26, 2008, Plaintiff filed this action in the United States District Court for the Southern District of Alabama, Southern Division, Civil Action No. 08-496-CG-B, and Capital One was served with a copy of the summons and Complaint on October 14, 2008.   Plaintiff claims that Capital One, *inter alia*, provided derogatory and false  information to credit reporting agencies regarding the two accounts, and negligently and wantonly attempted to collect debt due on the accounts.   Plaintiff further alleges that Capital One invaded the Plaintiff's privacy in attempting to collect on these accounts.  (Complaint, ¶¶ 22-51).  As set forth below, all of Plaintiff's claims against Capital One are due to be compelled to arbitration.

5

## **ARGUMENT**

### I. RUSSELL'S CUSTOMER AGREEMENT IS GOVERNED BY FEDERAL AND VIRGINIA LAW.

Russell's Customer Agreements include a choice of law provision, which states:

> **Governing Law.**   WE MAKE THE DECISION TO GRANT CREDIT, OPEN AN ACCOUNT AND ISSUE CREDIT CARDS FROM OUR OFFICES IN VIRGINIA.   This Agreement is to be construed in accordance with and governed by the laws of the Commonwealth of Virginia without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the laws of the United States of America or the internal laws of the Commonwealth of Virginia to the rights and duties of the parties.   **This Agreement is made in Virginia.   It will be governed only by Federal Law and Virginia law (to the extent not preempted by Federal Law)**.

(Exhibit A, Exhibits 3-6) (emphasis added)).   "Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement." Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So. 2d 1129, 1132 (Ala. 2003) (quoting Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991)).   Accordingly, federal and Virginia law control.

### II. RUSSELL'S CLAIMS SHOULD BE COMPELLED TO ARBITRATION PURSUANT TO FEDERAL AND VIRGINIA LAW; HOWEVER, THE SAME CONCLUSION IS ALSO TRUE PURSUANT TO ALABAMA LAW.

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. Specifically, arbitration must be compelled when two requirements are satisfied: (1) there is a valid arbitration provision that evidences the parties' agreement to submit their dispute to arbitration; and (2) the dispute is within the scope of the arbitration provision. See 9 U.S.C. § 2. It should also be noted that the FAA expresses a strong national policy favoring arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. See Southland Corp. v. Keating, 465 U.S. 1, 10 (1983). By enacting the FAA, Congress made clear its intent for arbitration agreements to be enforced as written, and to prevent parties from avoiding their contractual obligations to arbitrate. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985).

Pursuant to Virginia law, "[o]n application of a party showing [the existence of a valid agreement calling for arbitration], and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration." VA. CODE ANN. § 8.01-581.02. Furthermore, "the public policy of Virginia favors arbitration." Id. at 890-891 (citing TM Delmarva Power, LLC v. NCP of Virginia, LLC, 557 S.E.2d 199, 202 (Va. 2002)). The Supreme Court of Virginia has observed that "unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," the

court must compel the parties to arbitrate. Amchem Products, Inc. v. Newport News Circuit Court Asbestos Cases, 563 S.E.2d 739, 743 (Va. 2002) (citation omitted). Indeed, Virginia's liberal policy of supporting and enforcing arbitration agreements is underscored by the state's adoption of the Uniform Arbitration Act and its reenactment of Section 6.1.330.63 of the Virginia Code, which allows banks and other financial institutions to amend their existing customer agreements to incorporate arbitration agreements. See VA. CODE ANN. § 8.01-581.01 et seq. (2000); see also VA. CODE ANN. § 6.1.330.63 (2005).

Furthermore, Alabama law, while not controlling in this instance, mandates a similar conclusion. Specifically, pursuant to Alabama law, "[i]nitially, the party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction involving interstate commerce." McKay Bldg Co. v. Julianio, 949 So. 2d 882, 884 (Ala. 2006) (citing Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So. 2d 1129, 1132 (Ala. 2003)). The Alabama Supreme Court has also stated that "the federal policy favoring arbitration is so strong that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration..." Unum Life Ins. Co. of America v. Wright, 897 So. 2d 1059, 1085 (Ala. 2004) (citation omitted).

Therefore, pursuant to federal, Virginia as well as Alabama law, Russell's claims should be compelled to arbitration because: (1) Russell's Customer Agreements contain a valid arbitration provision; (2) Russell's claims fall within the broad scope of the arbitration provision; and (3) Russell's Customer Agreements evidence a transaction involving interstate commerce.

### A.   Russell's Customer Agreements Contain a Valid Arbitration Provision.

As set forth above, Russell's Customer Agreements for both the 3563 account and the 2101/3695 account clearly contain arbitration provisions which provide that the FAA applies and that either party can elect to proceed in arbitration.  Russell applied for, opened, used and made payments on both the 3563 and 2101/3695 accounts, which are both governed by Customer Agreements containing valid arbitration provisions. (See Exhibit A, ¶¶  2, 7-9, 10; Exhibits 7 and 8).  Russell manifested her assent to the terms of the Agreements by using and making payments on the accounts. See Durham v. Natl. Pool Equip. of Va., 138 S.E. 2d 55, 58 (Va. 1964).  The same conclusion is also mandated pursuant to Alabama law.  See, e.g., Memberworks, Inc. v. Yance, 899 So. 2d 940, 943 (Ala. 2004) (quoting UBS PaineWebber, Inc. v. Brown, 880 So. 2d 411, 414 (Ala. 2003)) (holding that "a person who continues a business relationship after receiving notice of an arbitration provision in the contract governing that

9

relationship implicitly consents to arbitrate any dispute that falls within the scope of that agreement").

It cannot be disputed that Russell's Customer Agreements contain enforceable arbitration provisions. As such, the first prong of the three-part test to compel arbitration pursuant to either federal, Virginia or Alabama law is satisfied.

### B. __Russell's Claims Fall Within The Broad Scope Of The Arbitration Provision__.

The arbitration provisions in Russell's Customer Agreements unambiguously state "[y]ou or we agree that you or we may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration," adding that the term:

"Claim" means any claim, controversy, or dispute of any kind or nature between you and us.

A.   *This definition includes, without limitation, any Claim that an any way arises from or relates to*:

[. . .]

• this Arbitration Provision (including whether any Claim is subject to arbitration)

[. . .]

• any billing or collection matters relating to your account

[. . .]

• any other matters relating to your account or your relationship with us.

10

*B. This definition also includes, without limitation, any Claim:*

[. . .]

• now in existence or that may arise in the future, regardless of when the facts and circumstances that give rise to the Claim occurred or when the Claim accrues

(Exhibit A, Exhibits 3-6). The Arbitration provision also states that "[q]uestions about whether any Claim is subject to arbitration shall be resolved by interpreting this Arbitration Provision in the broadest way it may be enforced, consistent with the FAA and the terms of this Arbitration Provision." (Id.). The language of the Arbitration provision is clear, and it is unambiguous – any claim, controversy or dispute of any kind or nature between Russell and Capital One is subject to binding arbitration. (Id.).

Pursuant to federal law, a clause requiring arbitration of any dispute "relating to" an agreement is "broad and far reaching." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.2d 1126, 1131 (9th Cir. 2000). The Virginia Supreme Court has also noted that "[b]road language of this nature covers contract-generated or contract-related disputes between the parties however labeled." McMullin v. Union Land & Management Co., 410 S.E.2d 636, 639 (citing Maldonado v. PPG Industries, Inc., 514 F.2d 614, 616 n. 6 (1st Cir. 1975)). Alabama law stands for a similar proposition. Serra Chevrolet, Inc. v. Hock, 891 So. 2d 844, 847 (Ala. 2004) (quoting AmSouth Bank v. Dees, 847 So. 2d 923, 932

(Ala. 2002)) ("repeatedly stated 'that the words 'relating to' in the arbitration context are given **broad construction**'") (emphasis in the original).  Ex parte Colquitt, 808 So. 2d 1018, 1024 (Ala. 2001) ("A motion to compel arbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute").  As such, there can be no dispute that Russell's claims fall within the scope of the arbitration provision at issue in this action.[1]

**C.    Russell's Customer Agreements Evidence A Transaction Involving Interstate Commerce.**

Russell's entire relationship with Capital One involved, and in fact substantially affected, interstate commerce.  In Citizens Bank v. Alafabco, Inc., the United States Supreme Court held that the phrase "involving commerce" in the FAA is the functional equivalent of the phrase "affecting commerce."  Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003).  There can be no legitimate dispute that the issuance and use of credit cards is an activity that affects interstate

---

[1] To the extent Russell attempts to dispute this inescapable conclusion, the arbitration provision and all applicable law mandates that any such dispute be submitted to the arbitrator for resolution.  Specifically, the parties expressly agreed to arbitrate any issues regarding the "Arbitration Provision (including whether any Claim is subject to arbitration)."  (Exhibit A, Ex. 3-6).  Where parties expressly agree to arbitrate the question of arbitrability, such issues should be resolved by the arbitrator.  See, e.g., First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) (observing that the question of "who has the primary power to decide arbitrability turns upon what the parties agreed about that matter"); Smith v. Mark Dodge, 934 So. 2d 375, 379-80 (Ala. 2006) (citing First Options, supra, in support of its holding that an arbitration provision stating "… any question regarding whether a particular controversy is subject to arbitration shall be decided by the Arbitrator," required that the dispute be submitted to arbitration as the provision "clearly and unmistakably manifested the intention of the parties to arbitrate the question whether a particular dispute or controversy is arbitrable").

commerce, is subject to federal control and has the requisite effect on interstate commerce to invoke the FAA.  See e.g., United States v. Klopf, 423 F.3d 1228, 1240 (11th Cir. 2005) (observing that credit cards generally are issued to applicants by out-of-state financial institutions and that credit-card account numbers travel across state lines, both electronically and by mail; holding that the acquisition of credit cards and their use for purchases and withdrawals affect interstate commerce).

To the extent that the question of whether Russell's claims should be compelled to arbitration were governed by Alabama law, which it is not, it is important to note that Alabama "no longer require[s] that an individual transaction involve a 'substantial effect' on interstate commerce."  McKay, 949 So. 2d at 886. Rather, one need simply present "some evidence" tending to establish its claim. Id.  This may be done by demonstrating that the transaction at issue involves: (1) use of channels of interstate commerce; (2) instrumentalities of interstate commerce, or persons or things of interstate commerce; or (3) general activities having a substantial effect on interstate commerce.  Id. at 885 (citing Wolff Motor Co. v. White, 869 So. 2d 1129, 1131 (Ala. 2003).  To the point:

> it would be difficult indeed to give an example of an economic or commercial activity that one could with any confidence, declare beyond the reach of Congress's power under the Commerce Clause, and, by extension under the FAA.

Service Corp. Intern, 883 So. 2d at 629.

13

The transaction at issue involved a credit card issued from Capital One to Russell. The Alabama Supreme Court has observed that "a contract […] concerning the terms of a *credit agreement between a national bank and the holders of its credit card* **clearly involves interstate commerce**." <u>Providian Nat. Bank v. Screws</u>, 894 So. 2d 625, 627 (Ala. 2003) (emphasis added). Moreover, the following facts confirm that Russell's entire relationship with Capital One involved, and in fact substantially affected, interstate commerce.

- Capital One, located in the Commonwealth of Virginia, provided credit cards to Russell. (Exhibit A, ¶11)

- The documents relating to Russell's account, including the credit cards, the Customer Agreements and all account statements, were mailed from locations outside the State of Alabama to Russell in the State of Alabama. (Exhibit A, ¶ 12).

Therefore, the Customer Agreement between Capital One and Russell demonstrates a transaction involving interstate commerce under federal and state law.[2]

## **CONCLUSION**

For the reasons stated above, Capital One respectfully requests that this Court provide the following relief:

---

[2]  Virginia courts have also held that the FAA "applies to contracts evidencing a transaction in interstate commerce." <u>Austin v. Tricord Homes, Inc.</u>, 2001 WL 469083, at *1 (Va. Cir. Ct. 2001).

(1)     an Order, pursuant to Section 4 of the FAA, 9 U.S.C. § 4, to compel Plaintiff to arbitrate all claims Plaintiff intends to raise in the pending action against Capital One;

(2)     an Order directing Plaintiff to take no further action outside of arbitration with regard to all claims covered by the Agreement; and

(3)     an Order staying this action pending the arbitration of Plaintiff's claims.

Further, Capital One requests expedited consideration of Capital One's Motion pursuant to the FAA, and the issuance of a briefing scheduling consistent therewith.


                                        Respectfully Submitted,


                                        s/W. Drake Blackmon
                                        Rik S. Tozzi
                                        ASB-7144-Z48R
                                        W. Drake Blackmon
                                        ASB-1566-W86B
                                        Attorneys for Defendant Capital One Bank
                                        (USA) N.A., incorrectly identified as Capital
                                        One

**OF COUNSEL:**
Starnes & Atchison, LLP
100 Brookwood Place, 7th Floor
P. O. Box 598512
Birmingham, AL 35259-8512

15

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kenneth J. Riemer, Esq.
Post Office Box 1206
Mobile, AL 36633
kjr@alaconsumerlaw.com

Kirkland E. Reid
Jones Walker LLP
Post Office Box 46
Mobile, AL 33601
kreid@joneswalker.com

Leilus Jackson Young, Jr.
Ferguson Frost & Dodson, LLP
2500 Acton Road
Suite 200
Birmingham, AL 35243
ljy@ffdlaw.com

Jeffrey Uhlman Beaverstock
Burr & Forman, LLP
P. O. Box 16046
Mobile, AL 36616
jeff.beaverstock@burr.com

Erin L. Dickinson
Jones Day
901 E. Lakeside Avenue
Cleveland, OH 44114
eldickinson@jonesday.com

s/W. Drake Blackmon
Rik S. Tozzi
ASB-7144-Z48R
W. Drake Blackmon

16

ASB-1566-W86B

Starnes & Atchison LLP

100 Brookwood Place, 7th Floor
P.O. Box  598512
Birmingham, Alabama  35259-8512
(205)  868-6088
(205)  868-6099 (facsimile)
rst@starneslaw.com
Attorneys for Defendant Capital One Bank
(USA) N.A., incorrectly identified as Capital
One